## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHNNIE FLOURNOY,

      Plaintiff,

v.                                          Case No. 3:24-cv-02420-GCS

WEXFORD HEALTH SOURCE, INC.,
PERCY MYERS, and LATOYA
HUGHES,

      Defendants.

### MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Johnnie Flournoy, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint, Flournoy alleges that he was denied medical care and medication for numerous conditions.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE COMPLAINT

Flournoy suffers from several conditions including glaucoma, high blood pressure, eczema, and an unknown throat condition. (Doc. 1, p. 5). He first started receiving treatment for his glaucoma at the University of Chicago ("UIC") Glaucoma Clinic, and doctors there informed him that his condition could be controlled using special eye drops to control the pressure and prevent further damage. *Id.* At the time he began treatment, Flournoy was incarcerated at Stateville Correctional Center and often went months without his prescribed drops. *Id.* This resulted in multiple surgeries on his eyes, including the implantation of tubes and a plate in both eyes. *Id.* Although originally placed on a medical hold, Flournoy alleges that Wexford released the hold. *Id.* at p. 5-6. He was then transferred to Lawrence Correctional Center in 2016 and later to Pinckneyville Correctional Center in July 2021. *Id.*

At Pinckneyville, Dr. Myers initially discontinued his blood pressure medication and glaucoma prescription. (Doc. 1, p. 6). Flournoy went without his glaucoma drops from May 2024 until August 23, 2024, when he received some of his medication. Flournoy alleges that as of October 24, 2024, he has yet to receive a further refill of his drops. *Id.* Flournoy also alleges that since arriving at Pinckneyville, his medications have been delayed for long periods of time, including his glaucoma eye drops, blood pressure medications, and eczema medications. *Id.* at p. 9. He had various verbal exchanges with Dr. Myers making Dr. Myers aware of the delays in his medication. But Dr. Myers merely blamed the pharmacist and Wexford. *Id.* Dr. Myers also took Flournoy off his prescription of baby Aspirin, which was initially prescribed for his blood pressure. Flournoy alleges

that Dr. Myers told him that the mediation was being discontinued because Flournoy had not yet had a heart attack. *Id*.

On August 8, 2021, while at Pinckneyville, Flournoy suffered a problem with the implant in his left eye and was sent to a hospital in St. Louis, Missouri. The doctors informed Flournoy that UIC should be handling his care. Flournoy alleges he never received follow-up care after visiting the hospital because Wexford has a cost-cutting policy that Dr. Myers enforced. (Doc. 1, p. 7). Flournoy alleges that he failed to receive proper treatment since transferring from Stateville and lost part of his vision in his left eye since being at Lawrence. *Id*. at p. 10. Despite UIC indicating that he needed to be properly monitored, Flournoy alleges that officials failed to properly monitor his condition, leading to his problems and transfer to St. Louis. *Id*. He also alleges that Wexford deliberately denied him treatment in retaliation for his prior lawsuits and complaints to the governor. *Id*.

As to his eczema condition, Flournoy alleges that he had to complain to the governor before Dr. Myers would provide any treatment or send him to a specialist. (Doc. 1, p. 7). He was eventually diagnosed with chronic eczema and prescribed medication. Dr. Myers, however, refused to follow the prescription as written due to cost cutting policies he was trying to enforce on behalf of Wexford. *Id*.

On May 6, 2024, Flournoy complained to a nurse that something was wrong, and he needed care. The nurse told him to put in a medical request slip and then wait to be placed on the sick call list. He called his sister who, in turn, spoke to the ADA Coordinator Christine Brown. (Doc. 1, p. 7-8). Brown spoke to the warden, who ordered Flournoy

transferred to the healthcare unit for care. Medical personnel in the unit determined that Flournoy was in A-fib and transferred him to an outside hospital for treatment. Flournoy notes that Brown and the warden helped provide him with proper care. He alleges medical staff were unhappy that the warden interfered with their care, but eventually realized that Flournoy's condition was serious and transported him to the hospital. *Id*. at p. 8, 10-11). Flournoy believes that his condition was caused by a throat issue that makes it difficult for him to swallow food and water. *Id*. at p. 8. As a result of the condition, he suffers from a chronic cough, gag, and choking that he believes caused his A-fib. *Id*. Although Flournoy presented his issues to Dr. Myers in 2023, he ignored his requests for care to cut costs for Wexford. *Id*. Flournoy argues that he needs outside medical care, but Dr. Myers and Wexford continue to turn a blind eye to his medical needs. *Id*.

### PRELIMINARY DISMISSALS

Flournoy alleges that an unknown nurse refused to provide him treatment for his A-fib attack. He further notes that healthcare unit staff were reluctant to send him to the hospital because the warden ordered Flournoy be brought to the unit based on a call from his sister. (Doc. 1, p. 10-11). Although Flournoy seeks to bring claims against these individuals, he has failed to identify them as defendants in the case caption. *See, e.g.*, *Myles v. United States*, 416 F.3d 551, 551-552 (7th Cir. 2005) (noting that to be properly considered a party, a defendant must be "specif[ied] in the caption."). Further, Flournoy fails to identify the specific individuals that he spoke to in the healthcare unit. Although Flournoy may certainly allege claims against identified John/Jane Does (*i.e.*, John Doe #1, John Doe #2), he refers only to the healthcare unit and does not identify a specific staff

member who provided him with care. (Doc. 1, p. 11). Thus, Flournoy fails to state a claim against any individual who acted with deliberate indifference in treating his A-fib.

Flournoy also alleges that Dr. Myers failed to supervise his staff to ensure they were properly providing Flournoy with medications and treatment. (Doc. 1, p. 11). But Dr. Myers cannot be liable simply in his position as a supervisor of the healthcare unit because the doctrine of *respondeat superior* (supervisory liability) does not apply to actions filed under Section 1983. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Dr. Myers can only be liable for his personal involvement in Flournoy's care, as discussed below.

Further, to the extent that Flournoy seeks to raise an ADA claim, his request is **DENIED**. Under the Americans with Disabilities Act ("ADA"), "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). Although Flournoy notes that he is an ADA inmate, he fails to indicate how defendants have failed to accommodate his disability. (Doc. 1, p. 3). Flournoy fails to allege that he has been denied services, programs, or activities due to his disability, only noting that his disability is not being accommodated by Wexford. *Id*. Failing to provide Flournoy with medical care does not amount to the denial of services or programs. *See, e.g.*, *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (stating that "[t]he ADA does not create a remedy for medical malpractice."). Thus, he fails to state a claim under the ADA.

Finally, Flournoy notes that he was denied and delayed treatment while incarcerated at Stateville and Lawerence, but he fails to identify any defendant that

denied him care at those institutions. Thus, any claim related to his care at these facilities is **DISMISSED**.

DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

Count 1:    **Eighth Amendment deliberate indifference claim against Dr. Myers for denying and delaying Flournoy access to medications and treatment for his glaucoma, high blood pressure, throat condition, heart issues, and eczema.**

Count 2:    **Eighth Amendment deliberate indifference claim against Wexford Health Source, Inc. for having a policy and/or practice of delaying and denying medical care and medications in order to cut costs for the company.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Flournoy states a viable claim in Count 1 against Dr. Myers. Flournoy alleges that Dr. Myers denied him medications, including baby Aspirin for his heart and his glaucoma and eczema medications. He also alleges that he needs outside medical care for his A-fib, throat issues, and glaucoma but Dr. Myers refuses to send him outside of

---

[1]    *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

the prison for care. And Dr. Myers allegedly delayed Flournoy's referral to a specialist for his eczema. Thus, Count 1 shall proceed against Dr. Myers.

Flournoy also states a viable claim against Wexford in Count 2. Wexford can only be liable for deliberate indifference if it had a policy or practice that caused the constitutional violation. *See Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982) (applying municipal liability to private corporations performing governmental functions); *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000). Flournoy alleges that Wexford had a policy and/or practice of delaying and denying medical care to save money. He alleges that Dr. Myers acted pursuant to that policy in delaying outside care for his various conditions and by denying and delaying his access to medications.[2]

## PRELIMINARY INJUNCTION

In his request for relief, Flournoy seeks a preliminary injunction including a transfer to a prison where he can be seen by UIC and a hold on his transfer from that prison. His request was previously denied because he failed to demonstrate he was entitled to such relief. (Doc. 5). But Flournoy also added Director Hughes to the case, in her official capacity only, to implement any injunctive relief awarded. Although Flournoy has not currently met the requirements for obtaining a preliminary injunction, to the

---

[2]     Flournoy also alleges that Wexford specifically denied him care as an act of retaliation for Flournoy's complaints. But Flournoy fails to point to any policy and/or practice that led to the retaliation. Thus, to the extent he alleges he was retaliated against by Wexford, this claim is **DISMISSED**.

extent he seeks injunctive relief in this case, Director Hughes will remain in the case, in her official capacity only.

### DISPOSITION

For the reasons stated above, Count 1 shall proceed against Dr. Myers. Count 2 shall proceed against Wexford Health Source, Inc. Latoya Hughes remains in the case for purposes of implementing any injunctive relief awarded.

The Clerk of Court shall prepare for Defendants Dr. Percy Myers, Wexford Health Source, Inc., and Latoya Hughes (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Flournoy. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Flournoy, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

**Because Flournoy's claims involve his medical care, the Clerk of Court is DIRECTED to enter the Court's standard HIPAA Qualified Protective Order.**

If judgment is rendered against Flournoy, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Flournoy is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. PROC. 41(b).

**IT IS SO ORDERED.**

**DATED:  December 23, 2024.**

Digitally signed by
Judge Sison
Date: 2024.12.23
12:07:08 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**